**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT MOORE** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-00279-DCG** |
| | § | |
| **U.S. IMMIGRATION AND CUSTOMS** | § | |
| **ENFORCEMENT; U.S. CUSTOMS AND** | § | |
| **BORDER PROTECTION; AND** | § | |
| **U.S. DEPARTMENT OF HEALTH** | § | |
| **AND HUMAN SERVICES,** | § | |
| **Defendants.** | § | |

**DEFENDANT CBP'S OPPOSED MOTION FOR *OPEN AMERICA* STAY AND**
**EXTENSION OF FINITE PRODUCTION SCHEDULE**

Plaintiff, Robert Moore, filed two Freedom of Information Act (FOIA) requests with Defendant, United States Customs and Border Protection (CBP) in 2018. One request related to handling of potential asylum seekers at ports of entry when port facilities are at capacity (Request CBP-2018-064544). The second request related to a mobile field force demonstration that was originally scheduled for November 2018 (Request CBP-2019-010211). CBP's searches for these two requests collectively identified over 1,000 files of potentially responsive records, consisting of over 330 Gigabytes (GB) of data. All responsive records for both FOIA requests are to be produced to Plaintiff by November 20, 2020. ECF No. 51 at 9.

Defendant CBP has exercised due diligence in responding to Plaintiff's FOIA requests. However, due to exceptional circumstances and the volume of data identified in conducting the searches to Plaintiff's FOIA requests, Defendant respectfully moves for a stay of proceedings pursuant to 5 U.S.C. § 552(a)(6)(C), and *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). Defendant further seeks to extend its deadline under the finite

production schedule. In support of this motion, Defendant will respectfully show the Court the following:

## I.     <u>Procedural History</u>

After submitting two FOIA requests to CBP in 2018, Plaintiff filed his lawsuit asserting that CBP refused to timely release records responsive to his FOIA requests. ECF No. 1, ¶¶ 6-7.[1] CBP admitted in its answer that as of the date Plaintiff filed the instant suit, CBP had not produced any responsive records to Plaintiff's requests. ECF No. 15, ¶ 5. Thereafter, Plaintiff filed his Motion for Judgment on the Pleadings asking the Court to enter an order of judgment on the pleadings and order immediate production of the records sought. ECF No. 26 at 6. Defendants CBP, ICE, and HHS collectively moved to stay their deadline to respond to Plaintiff's Motion for Judgment on the Pleadings. ECF No. 30. The Court granted Defendants' motion for stay and ordered the parties to comply with a production schedule set out in its Order. ECF No. 31. Pursuant to the production order, CBP, along with the other defendants, began filing monthly status reports with the Court. *See* ECF Nos. 32, 35, 37, 39, 44, 50.

Plaintiff filed his Opposed Motion to Lift Stay for Defendants to Respond to Plaintiff's Motion for Judgment on the Pleadings and to Compel a Finite Production Schedule. ECF No. 46.[2] The Court granted in part and denied in part Plaintiff's motion. ECF No. 51 at 9. The Court denied Plaintiff's request to lift the stay. *Id*. Although Defendants had not filed for an *Open America* stay, the Court, in denying Plaintiff's request to lift the stay that was in place, detailed the factors to be considered pursuant to *Open Am.*, 547 F.2d at 605 and 5 U.S.C. § 552(a)(6)(C)(ii-iii). *Id*. at 4-5.

---

[1] Plaintiff's lawsuit names CBP, U.S. Immigration and Customs Enforcement (ICE) and U.S. Department of Health and Human Services (HHS) as defendants. Plaintiff submitted separate FOIA requests with each defendant. CBP is the only defendant seeking relief in the instant motion.

[2] "Plaintiff only moved to lift the stay and to enter a finite production schedule as to CBP and HHS, not ICE." ECF No. 51 at 2 n.1.

The Court found that "the record shows that 'exceptional circumstance' exist and that CBP … [is] generally exercising due diligence in responding to Plaintiff's relevant requests." *Id*. at 5.

The Court granted Plaintiff's request to compel a finite production schedule. *Id*. at 9. The Court ordered CBP to inform the Court of the number of pages of all potentially responsive records for Plaintiff's two FOIA request. *Id*. Further, CBP is to complete processing and production of all responsive records to Plaintiff's two FOIA requests by November 20, 2020. *Id*. On August 14, 2020, CBP reported that request CBP-OFO-2019-010211 had an initial total of approximately 63,600 pages of potentially responsive records. ECF No. 52. At that time, CBP estimated that 58,500 of those pages remained unprocessed. *Id*. Additionally, CBP estimated that request CBP-2018-064544 consisted of 90,000 – 150,000 pages of potentially responsive records. *Id*. at 2. As will be detailed further below, CBP has taken extraordinary steps in obtaining resources to designate exclusively to Plaintiff's FOIA requests. Given CBP's current efforts and the large volume of potentially responsive records, CBP now seeks an *Open America* stay and extension of the current production schedule.

## II.     Search History

### A.     Request CBP-OFO-2019-010211.

Plaintiff's FOIA request CBP-OFO-2019-010211 requested records, "regarding a Mobile Field Force Demonstration originally scheduled for November 6, 2018, in El Paso, Texas." ECF No. 1, ¶ 42. The covered time period for this request was from October 1, 2018 to November 11, 2018. *Id*. The CBP FOIA Division (FOIA Division) originally deemed Plaintiff's request as overly broad. Exhibit 1, Declaration by Patrick Howard, ¶ 24. Despite deeming Plaintiff's request overly broad, the FOIA Division completed its search for responsive records in January 2020. *Id*., ¶ 25. The search identified 511 files of potentially responsive records. *Id*. A file consists of document

families. *Id.* A document family is an email and any attachments to that email. *Id.* The 511 files identified by CBP consisted of 6,064 emails containing 8,358 documents.[3] *Id.* CBP estimates the 8,358 documents consists of approximately 63,600 pages of records. *Id.*

Between February and October 2020, the FOIA Division reviewed approximately 85 files consisting of 19,805 pages of potentially responsive records for FOIA request CBP-OFO-2019-010211. *Id.,* ¶ 26. The FOIA Division found 112 pages to be responsive and partially releasable, 8 pages were responsive and withheld in full, 18,873 pages non-responsive, and 812 pages to be duplicative. *Id.* Records were processed as follows:

| Month | Pages Reviewed | Number Responsive | Date Released |
|---|---|---|---|
| Feb.-March | 2,022 pages | None | N/A |
| April | 673 pages | None | N/A |
| May | 711 pages | None | N/A |
| June | 651 pages | 10 pages | June 29, 2020 |
| July | 1,051 pages | 36 pages | July 28, 2020 |
| August | 750 pages | 08 pages | August 19, 2020 |
| September | 667 pages | 05 pages | September 28, 2020 |
| October | 13,280 pages | 53 pages | October 30, 2020 |

*Id.* As of October 30, 2020, approximately 426 of the original 511 files need to be processed. *Id.,* ¶ 27. The remaining 426 files are made up of approximately 42-43 GB of data. *Id.* CBP estimates the remaining 426 files contain approximately 43,800 pages of potentially responsive records. *Id.*

**B.     Request CBP-2018-064544.**

Plaintiff's FOIA request CBP-2018-064544 requested "any and all directives, emails, texts messages and other communications from CBP officials regarding the handling of potential asylum seekers at ports of entry when port facilities are at 'capacity.'" ECF No. 1, ¶ 18. The covered time period for the request was from January 1, 2018 to June 16, 2018. *Id.* The FOIA

---

[3] The number of documents identified does not necessarily equal the total number of pages of records that are potentially responsive to Plaintiff's FOIA request. Each document may consist of multiple pages.

Division originally deemed Plaintiff's request as overly broad. Ex. 1, ¶ 34. In January 2020, counsel for Plaintiff and CBP conferred on narrowing search parameters for this request. *Id*. The search identified 287 GB of data containing approximately 520 files of potentially responsive records. *Id*. CBP estimates these files contain approximately 90,000 – 150,000 pages of records. *Id*.

The 287 GB of data have not been transferred to the FOIA Division for processing. *Id*., ¶ 35. The FOIA Division lacks available space on its shared drive to permit CBP's Office of Information Technology (OIT) to transfer the files to the FOIA office for review. *Id*. The FOIA Division works with the OIT eDiscovery Team in facilitating FOIA searches. *Id*., ¶ 18. Like the FOIA Division, the eDiscovery Team has been struggling for several years with resource availability, both in staffing, tools and storage resources. *Id*. The FOIA Division has looked at external hard drives, shared or other drives as a means to have the files transferred from OIT to the FOIA Division. *Id*., ¶ 35. Data space remains unavailable. *Id*.

In conducting its search for files of potentially responsive records, the eDiscovery Team uses several different email recovery tools to recover email messages. *Id*., ¶ 18. Discovery Accelerator and Clearwell run collections/searches pulling from Journaled data. *Id*.[4] During a search, data is pulled from a third party site. *Id*., ¶ 19. This means there are points where the eDiscovery technician is granted permission to access data. *Id*. Discovery Accelerator can only run basic searches, meaning searches can be run using "AND" or "OR" in the search string. *Id.* Discovery Accelerator cannot do proximity searches. *Id*. Clearwell is the more robust tool and can handle more complex search strings. *Id.* The limitation for Clearwell is the eDiscovery Team

---

[4] The eDiscovery Team also uses Office 365 E3, and Windows to pull Electronically Stored Information (ESI) emails from individual hard drives, personal drives or group shared drives. *Id*. at ¶ 21.

is limited by its number of processing licenses. *Id.* CBP purchased 8.5 Terabytes (TB) of processing licenses. *Id.* As of the date of this filing, there are only 217 GB of processing licenses available. *Id.* This means if the search collection in Clearwell exceeds 200 GB the data collected cannot be processed. *Id.* The search for FOIA request CBP-2018-064544 identified 287 GB of data. *Id.*, ¶ 34.

There are two ways to make processing licenses available. The first is to archive a search, the second is to purchase more licenses. *Id.,* ¶ 20. There are 122 active cases in Clearwell. *Id.* Nine of these active cases have used 6.1 TB of the licensure. *Id.* The other 113 have used 1.9 TB of data. *Id.* Currently, no archiving can be completed to release any processing licenses. *Id.* Due to the lack of data space or processing license, the search files identified as potentially responsive for request CBP-2019-064544 have not been able to be transferred to the FOIA Division. *Id.*, ¶ 35.

### III.   Argument

CBP requests an *Open America* stay of the instant proceedings so that CBP can complete processing records identified as potentially responsive to Plaintiff's two FOIA requests. *See Open Am.*, 547 F.2d at 605. In support of its motion, CBP has provided a sworn declaration from Patrick Howard, Branch Chief, FOIA Division, CBP, Department of Homeland Security (DHS) which explains that, based on the number of potentially responsive records that CBP has located, coupled with the existence of exceptional circumstances faced by the FOIA Division, a stay is appropriate at this time.

### A.   Legal Standard for a Stay of Proceedings.

An agency receiving a FOIA request generally must determine whether to comply with the request within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i). Once the initial twenty days has passed without an agency determination on the request, the FOIA requester "shall be deemed to

have exhausted his administrative remedies," and the requestor can file suit in federal court. *See* 5 U.S.C. § 552(a)(6)(C)(i). The court may, however, "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *Id.* This provision "was designed and inserted specifically as a safety valve for [FOIA]." *Open Am.*, 547 F.2d at 610. CBP needs additional time to complete the review of records potentially responsive to Plaintiff's two FOIA requests.

In *Open Am.*, 547 F.2d at 605, the D.C. Circuit construed 5 U.S.C. § 552(a)(6)(c) as follows:

> In summary, we interpret Section 552(a)(6)(c) to mean that "exceptional circumstances exist" when an agency … is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests. In such situation, in the language of subsection (6)(c), "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." Under the circumstances defined above the time limits prescribed by Congress in subsection (6)(A) become not mandatory but directory. The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

*Id.* at 616. The Electronic Freedom of Information Act Amendments of 1996 (E-FOIA) clarified the standard for obtaining a stay. *See Gov't Accountability Project v. U.S. Dep't of Health & Human Servs.*, 568 F.Supp.2d 55, 58 (D.D.C. 2008). In order to obtain a stay, "due diligence" in processing requests is always necessary. *See id.* at 63. Consistent with *Open Am.*, the amendments exclude from exceptional circumstances any "delay that results from a predictable agency workload of requests … unless the agency demonstrates reasonable progress in reducing its

backlog" of pending requests. E-FOIA Amend. of 1996, Pub. L. No. 104-231; § 7(c), 110 Stat. 3048 (codified as amended at 5 U.S.C. § 552(a)(6)(C)(ii)).

Following *Open Am.* and the 1996 amendments, courts' interpretation of the requirements "has evolved into four conditions that must be satisfied to warrant granting an *Open America* Stay: '(1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; and (3) when the agency shows that it is exercising due diligence in processing the requests; and (4) the agency shows reasonable progress in reducing its backlog of requests.'" *Elec. Frontier Found. v. Dep't of Justice*, 563 F.Supp.2d 188, 193-94 (D.D.C. 2008); *Summers v. U.S. Dep't of Justice*, 925 F.2d 450, 451 n.2 (D.C. Cir. 1991) (noting first three factors). Courts have also considered additional factors in determining whether there are exceptional circumstances, including: the complexity of the request, newly imposed statutory or regulatory burdens on the agencies, and other impediments that might prevent an agency from swiftly processing a request. *Buc v. Food & Drug Admin.*, 762 F.Supp.2d 62, 66 (D.D.C. 2011), as amended (Feb. 24, 2011) (citing *Gov't Accountability Project*, 568 F.Supp.2d at 59).

Finally, agency affidavits and declarations in support of a stay under *Open Am.* are given "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and internal quotation marks omitted); *see also Nat'l Sec. Archive v. S.E.C.*, 770 F.Supp.2d 6, 9 (D.D.C. 2011) (quoting *Elec. Frontier Found. v. Dep't of Justice*, 517 F.Supp.2d 111, 117 (D.D.C. 2007)).

**B.     Exceptional Circumstances.**

This Court has previously found exceptional circumstances exist due to the exigent circumstances presented by the COVID-19 pandemic. ECF No. 51 at 5-6. The Centers for Disease

Control and Prevention (CDC) reported that between January 21, 2020 and November 13, 2020, the United States has had a total of 10,508,864 COVID-19 cases resulting in 242,216 deaths. *See* CDC COVID-19 Data Tracker, https://covid.cdc.gov/covid-data-tracker. On November 13, 2020, 181,801 new cases were reported in the United States, with a 7-day moving average of 139,437 cases. *Id*. at https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases. This is the second highest single day total for new cases, and the highest 7-day moving average since January 22, 2020. *Id*.

The declaration of Patrick Howard, Branch Chief in the CBP FOIA Division, explains how COVID, coupled with excessive workload and the need for additional resources have created the existence of exceptional circumstances for the FOIA Division, thus justifying the need for an *Open America* stay. *See* Ex. 1. Mr. Howard explains that the COVID-19 pandemic has directly impacted the FOIA Division's ability to process FOIA requests. *Id.,* ¶ 17. Mr. Howard explains that FOIA Division personnel are required to telework due to the pandemic. *Id*. He goes on to explain that CBP's computer servers were overwhelmed by the number of personnel teleworking, causing long delays in processing FOIA requests. *Id*. Mr. Howard explains that OIT has resolved many of these initial issues and delays. *Id*. The FOIA Division is working to catch up on its workload that was hampered by the delays experienced earlier in the year. *Id*.

The FOIA Division is made up of 31 full-time staff and FOIA processors, 6 FOIA assistants, and 4 supervisory employees. *Id*., ¶ 8. FOIA requests processed by FOIA Division staff have become significantly more complex and voluminous over the past several years. *Id*., ¶¶ 5-6. Over each of the past three years, the FOIA Division received more than 86,000 FOIA requests per year. *Id*., ¶ 5. By comparison, during his first year as Branch Chief in 2015, the FOIA Division received 52,290 requests. *Id*., ¶ 6. The FOIA Division received 66,690 request in fiscal year (FY)

2016, 88,840 requests in FY2017, 87,388 in FY2018, and 86,133 in FY2019. *Id*. Between FY2015 and FY2019, the FOIA Division experienced more than a 60% increase in the number of FOIA requests received. *Id*. Mr. Howard did not, and could not have anticipated such a dramatic increase in FOIA requests over the past five years. *Id*. Currently, the FOIA Division has a backlog of over 1,000 requests. *Id*. The requests that make up the backlog are principally large volume complex requests. *Id*.

The FOIA Division has consistently sought additional resources to address its heavy workload. *Id.,* ¶ 8. Mr. Howard personally oversees approximately 25 FOIA requests that are currently in litigation, including the instant matter. *Id*., ¶ 7. For assistance with these cases in litigation, Mr. Howard has multiple staff that have been pulled from their primary duties to assist him with litigation full time, and others who assist on a 25% - 50% basis. *Id*.

Simply put, the FOIA Division is inundated with an unexpected increase in the amount of FOIA requests submitted to CBP. Compounding this increase in workload, the current COVID-19 pandemic and need for employees to telework has significantly delayed the FOIA Division's ability to process requests, particularly during the first half of 2020. *Id*., ¶ 17. CBP's remote servers had difficulty handling the volume of people teleworking. *Id*. While the CBP's OIT has worked to resolve many of server issues and delays, the exceptional circumstances described have made it impossible for the agency to respond to Plaintiff's FOIA request within FOIA's statutory time limits or current production schedule. *Id. See also Elec. Frontier Found.*, 563 F.Supp.2d at 193; *see also Open Am.*, 547 F.2d at 616 (describing factors).

**C.    Due Diligence.**

Since Plaintiff filed his litigation, the FOIA Division completed its searches for responsive records to Plaintiff's FOIA request CBP-OFO-2019-010211 and CBP-2018-064544. Ex. 1, ¶¶ 25,

34. In relation to request CBP-OFO-2019-010211, the FOIA Division identified a total of 511 files consisting of 6,064 emails containing 8,358 documents. *Id*., ¶ 25. CBP estimates 63,600 pages of records make up the 8,358 documents. *Id*. Between February and October 2020, the FOIA Division reviewed approximately 85 files consisting of 19,805 pages of potentially responsive records for FOIA request CBP-OFO-2019-010211. *Id*., ¶ 26. The FOIA Division found 112 pages to be responsive and partially releasable, eight pages were responsive and withheld in full, 18,873 pages non-responsive, and 812 pages to be duplicative. *Id*.

As of October 30, 2020, approximately 42-43 GB of data remains unprocessed for request CBP-OFO-2019-010211. *Id*., ¶ 27. There are approximately 426 files remaining, from the original 511. *Id*. A file consists of document families that are made up of an email and any attachments to that email. *Id*. CBP estimates 43,800 pages of records remain unprocessed for request CBP-OFO-2019-010211. *Id*.

In relation to request CBP-2018-064544, CBP identified 287 GB of data in its search for responsive records. *Id*. at ¶ 34. CBP estimates the 287 GB is made up of approximately 520 files containing 90,000 – 150,000 pages of potentially responsive records. *Id*. The FOIA Division has not begun reviewing records for request CBP-2018-064544 because it lacks space on it shared drives to receive the records identified as potentially responsive. *Id*., ¶ 35. The FOIA Division has worked with OIT to have the files transferred, but the files remain unavailable. *Id*. The FOIA Division is still exploring ways to receive the data from OIT in an effort to avoid delay in processing, once the current available set of records is completed. *Id*., ¶ 35.

Despite limited resources in relation to its workload, in October 2020, the FOIA Division was able to assign a full-time contract employee to work exclusively on processing request CBP-OFO-2019-010211. *Id*., ¶ 28. This employee was able to significantly increase the rate of review

compared to previous months. *See id.* at ¶ 26. The employee processed approximately 25 files during the month of October, consisting of a total of 13,280 pages. *Id*. This employee will remain exclusively assigned to processing Plaintiff's FOIA requests until they are completed. *Id*. Additionally, beginning November 23, 2020, the FOIA Division will dedicate a second full-time contract employee exclusively assigned Plaintiff's FOIA requests. *Id*., ¶ 29. This second employee will also remain exclusively assigned to processing Plaintiff's FOIA requests until they are completed. *Id*.

CBP estimates each contract employee that is exclusively assigned to Plaintiff's FOIA requests can review an average of 12,500 pages of records each month. *Id*., ¶ 30. However, all these records will need to undergo a final review by a FOIA supervisor prior to release. *Id*. A FOIA supervisor, in balancing all their duties and responsibilities, typically reviews an average of 500 pages of records per month for each case they oversee. *Id*., ¶ 31. The FOIA Division is committing its resources so that a minimum of 5,000 pages per month can undergo final supervisory review for Plaintiff's requests. *Id*. This is a tenfold increase in the average rate of review per request each month.

The FOIA Division will maintain two full-time employees exclusively dedicated to Plaintiff's requests. *Id*., ¶ 36. CBP estimates these two employees will continue processing 25,000 pages of records each month. *Id*. The FOIA Division will remain committed to completing 5,000 final reviews per month. *Id*. Only one other request in the FOIA Division has a staff person exclusively assigned to its processing. *Id*., ¶ 37. That request is also in litigation and has over 2 million pages of potentially responsive records. *Id*. It is clear from the FOIA Division's committed resources to Plaintiff's FOIA requests, when balanced with its total number of FOIA requests and

workload, demonstrates the FOIA Division "is exercising due diligence" in processing Plaintiff's FOIA requests. *See Open Am.*, 547 F.2d at 616.

**D.**     **Requested Stay.**

Plaintiff's requests are complex. Ex. 1, ¶ 13. In processing records for a complex FOIA request, the FOIA processor must review all potentially responsive records that were identified by the FOIA search. *Id*., ¶ 15. Records that are deemed clearly non-responsive or duplicative are segregated from records requiring a detailed line-by-line review for responsiveness. *Id*. During the line-by-line review, each record is reviewed to determine whether it, any portion of it, is responsive to the FOIA request. *Id*. Responsive and releasable records may require redactions if one of the nine FOIA exemptions are claimed by CBP. *Id*. All documents reviewed, must then undergo a final supervisory review to ensure accuracy. *Id*. The final review confirms whether documents are non-responsive, duplicative, or responsive. *Id*. It further confirms that any exemptions claimed are appropriate and that redactions are limited to only the portions of the record to which the exemption applies. *Id*. These processing policies are designed to most equitably provide the largest number of requesters the largest amount of information possible. *Id*., ¶ 16. Following CBP's established policies for processing FOIA requests, allows CBP to efficiently utilize its limited resources and maintain information security while processing approximately 7,200 FOIA requests per month. *Id*.

Specific to the instant matter, the FOIA Division is dedicating extraordinary resources to Plaintiff's requests. *Id*., ¶ 37. As stated, despite its lack of resources, beginning November 23, 2020 the FOIA Division will have two full-time contract employees dedicated to processing Plaintiff's FOIA requests. *Id*., ¶¶ 29, 36. After the two FOIA processors conduct their review of records, a final supervisory review will need to be completed. To further facilitate processing, the FOIA Division is committed to conducting final supervisory reviews of at least 5,000 pages of records

per month. *Id*., ¶ 31. Final review of 5,000 pages per month for a specific FOIA request represents a tenfold increase in the typical number of final reviews completed for a request. *See id*. The FOIA Division commitment of resources to the instant matter is extraordinary. *Id*., ¶ 37. By comparison, only one other request pending in the FOIA Division has a staff person exclusively assigned to its processing. *Id*. That request is also in litigation and has over 2 million pages of potentially responsive records. *Id*.

CBP respectfully seeks to stay proceedings in this case until at least June 30, 2021. Although it is unlikely that processing for both of Plaintiff's FOIA requests can be completed by said date, CBP believes significant progress can be accomplished. CBP acknowledges that they are asking the Court for a lengthy stay. CBP asserts that it has worked diligently in responding to Plaintiff's FOIA requests and this Court's production order. *See* ECF No. 31 at 2. CBP further asserts that to the potential detriment of other FOIA requests, it has dedicated extraordinary resources to the processing Plaintiff's requests. *See* Ex. 1, ¶ 37. Thus, this request meets the standards established under 5 U.S.C. § 552(a)(6)(C) and *Open Am.*; a stay is warranted in light of the number of potentially responsive documents, Defendants' existing backlog, the increasing number and complexity of FOIA requests, and CBP's diligence in processing Plaintiff's request. CBP is processing Plaintiff's requests in accordance with established policies that allow for the equitable and orderly processing of FOIA requests. The volume of potentially responsive records in this case, the large number of resources expended on the processing of Plaintiff's large and complex requests, coupled with the limited resources available to the FOIA Division for the processing of all FOIA requests received, constitutes exceptional circumstances necessitating a stay so that CBP may complete their review of the records.

CBP requests a stay until at least June 30, 2021. CBP can continue providing monthly reports on its progress. CBP would respectfully reserve the right to seek an extension beyond June 30, 2021, only upon a showing that it continues to be diligent in processing Plaintiff's requests and if the Court is satisfied that further extensions are merited.

### IV.    CONCLUSION

For the foregoing reasons, the CBP respectfully requests that the Court grant this motion, and stay proceedings in this case with respect to Plaintiff's request until June 30, 2021.

Respectfully submitted,

**GREGG N. SOFER**
UNITED STATES ATTORNEY

/s/ Manuel Romero
**MANUEL ROMERO**
Assistant United States Attorney
Texas State Bar No. 24041817
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
Office: (915) 534-6555
Facsimile: (915) 534-3490
Email: manuel.romero@usdoj.gov
*Attorneys for Defendants*

### CERTIFICATE OF CONFERENCE

Counsel for Defendant, U.S. Customs and Border Protection, conferred with Plaintiff's counsel, Christopher Benoit, and he is opposed to the relief requested.

/s/  Manuel Romero
**MANUEL ROMERO**
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of November, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants: Lynn Coyle and Christopher Benoit, *Attorneys for Plaintiff*.


 /s/ Manuel Romero
**MANUEL ROMERO**
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT MOORE** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-00279-DCG** |
| | § | |
| **U.S. IMMIGRATION AND CUSTOMS** | § | |
| **ENFORCEMENT; U.S. CUSTOMS AND** | § | |
| **BORDER PROTECTION; AND** | § | |
| **U.S. DEPARTMENT OF HEALTH** | § | |
| **AND HUMAN SERVICES,** | § | |
| **Defendants.** | § | |

## ORDER

The Court, having considered Defendant CBP's Opposed Motion for *Open America* Stay, in the above-entitled and numbered cause, is of the opinion that said motion should be, and is hereby **GRANTED**.

THEREFORE, IT IS ORDERED the instant matter is stayed for _____ months to enable CBP to complete processing Plaintiff's FOIA request CBP-OFO-2018-010211 and CBP-2018-064544.

IT IS FURTHER ORDERED that CBP shall advise the Court monthly as to the status and progress in processing Plaintiff's FOIA request.

SIGNED this _____ day of _____, 2020.

_____
**DAVID C. GUADERRAMA**
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| ROBERT MOORE,<br>    *Plaintiff,*<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT; U.S. CUSTOMS AND<br>BORDER PROTECTION; AND<br>U.S. DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES,<br>    *Defendants.* | Case No. EP-19-CV-00279-DCG |

## <u>DECLARATION BY PATRICK HOWARD</u>

My name is Patrick Howard, and I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), Department of Homeland Security (DHS).

1.  I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists (GIS), the processing of requests for records submitted to CBP pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.  I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

3.  The statements in this Declaration are made on the basis of my personal knowledge of the internal operations of this office and agency and information acquired by me in the course of the performance of my official duties.

4.  I am familiar with the procedures followed by CBP in responding to requests for information pursuant to the provisions of FOIA, and with the requests made by the Plaintiff in the above-captioned matter.

5.  The CBP FOIA Division has received more than 86,000 FOIA requests in each of the past three fiscal years. The FOIA requests are becoming increasingly more complex and voluminous.

6.     The FOIA Division received 52,290 requests in fiscal year (FY) 2015, 66,690 request in FY2016, 88,840 in FY2017, 87,388 in FY2018, and 86,133 in FY2019. Comparing FY2015 and FY2019, the FOIA Division experienced more than a 60% increase in the number of FOIA requests received. Since becoming Branch Chief for the FOIA Division, I could not have anticipated such a dramatic increase in the number of FOIA requests received. Currently, the FOIA Division has a backlog of over 1,000 requests, principally consisting of a large volume complex requests.

7.     I am personally overseeing approximately 25 requests that are currently in litigation, including the instant matter. I have multiple staff that have been pulled from their primary duties to assist me with litigation full time, and more still who assist on a 25% - 50% basis.

8.     Despite the large size of CBP as an organization, the FOIA Division currently consists of approximately 31 full-time staff and FOIA processors, 6 FOIA assistants, and 4 supervisory employees. The FOIA Division consistently seeks additional resources to address its heavy workload.

9.     In general, after receiving a FOIA request, CBP's standard practice is as follows:  the FOIA Division reviews the FOIA request; determines if the FOIA request reasonably describes the records requested and complies with applicable agency rules and procedures; determines if responsive records exist, often by reaching out to CBP offices and personnel; facilitates a search for potentially responsive records; and determines whether records from a search are responsive to the FOIA request and/or should be partially redacted or withheld under any one of FOIA's nine statutory exemptions.

10.    The FOIA Division divides FOIA requests into two categories: simple and complex.  A simple request—also referred to as a traveler request—is one where a member of the traveling public requests records related to his or her travel.  Generally, these records are housed in accessible databases that can be swiftly searched, and require routine, minimal redactions due to their display format.

11.    Complex FOIA requests—also referred to as non-traveler requests—are all other types of FOIA requests received.  Examples of complex requests include requests from businesses for import and export records, requests for information related to an Executive Order, and requests from media sources or special interest groups focused on a variety of matters not specific to an individual traveler.

12.    For complex FOIA requests, the FOIA Division must determine which CBP offices are likely to have responsive information.  The FOIA Division then works with those offices to determine which custodians are likely to have responsive records.  In most cases, the FOIA Division works directly with the custodian to gather electronic records and hard copy (paper) records.  This is often because many records are not centrally located and/or retrievable by the FOIA Division.  Rather, they must be collected by different offices or custodians and then

sent to the FOIA Division for review. Additionally, in my experience, individual offices may have different ways of storing their records, or particular search terms may be better suited for one office over another based on the type of work they do or documents they maintain. Consequently, the FOIA Division often confers with an office or custodian to execute a search based on the language of the FOIA request and the way an office or custodian maintains potentially responsive records. Sometimes, based on the facts of a situation or records at issue, it makes sense to craft different searches among different offices or custodians.

13.   CBP policy for processing FOIA requests is generally done on a first-in, first-out (FIFO) basis. Simple, or traveler requests, are processed on a FIFO basis among other simple requests. Complex, or non-traveler requests, are generally processed on a FIFO basis among other complex requests. Plaintiff's FOIA requests are complex.

14.   Once the search for responsive documents is completed, the FOIA Division must review the records identified to determine which records are releasable. Additionally, if another federal agency has an equity interest in a responsive record, the FOIA processor must consult with that agency to determine whether the record is releasable.

15.   In processing FOIA requests, a FOIA processor reviews all potentially responsive records to determine whether each record is responsive to the request. Records that are deemed clearly non-responsive or duplicative are segregated from records requiring a detailed line-by-line review for responsiveness. During the line-by-line review of a record, it is reviewed to determine whether it, any portion of it, is responsive to the FOIA request. Responsive and releasable records may require redactions if one of the nine FOIA exemptions are claimed by CBP. All records reviewed by the FOIA processor then undergo a final supervisory review to ensure accuracy. The final review confirms whether documents are non-responsive, duplicative, or responsive. It further confirms that any exemptions claimed are appropriate and that redactions are limited to only the portions of the record to which the exemption applies.

16.   CBP's processing policies are designed to most equitably provide the largest number of requesters the largest amount of information possible. Following CBP's established policies for processing FOIA requests allows CBP to efficiently utilize its limited resources and maintain information security while processing approximately 7,200 FOIA requests per month.

17.   The FOIA Division experienced technological issues in its ability to process FOIA requests during the first half of 2020. Due to the COVID-19 pandemic, CBP required many of its personnel to telework instead of working from their normal workstations. The large number of personnel teleworking initially overwhelmed CBP computer servers causing long delay in the processing of FOIA requests. While FOIA Division staff remain teleworking, CBP's Office of Information Technology (OIT) has worked and resolved many of the initial issues or delays

experienced by FOIA Division staff. The FOIA Division continues working to reduce its backlog.

18.     The FOIA Division works with the OIT eDiscovery Team in facilitating FOIA searches. Like the FOIA Division, the eDiscovery Team has been struggling for several years with resource availability, both in staffing, tools and storage resources. The eDiscovery Team assists the FOIA Division in locating email records responsive to FOIA requests. The eDiscovery Team uses several different email recovery tools to recover email messages. Discovery Accelerator and Clearwell run collections/searches pulling from Journaled data. There are 5 eDiscovery technicians available to conduct searches, but searches can only be done one at a time. Each search typically takes approximately 8 hours to complete. In order to run a search, a search session must be available.

19.     During a search, data is pulled from a third party site. This means there are points where the eDiscovery technician is granted permission to access data. For Discovery Accelerator each eDiscovery technician has to log on with an Administrator account. Discovery Accelerator can only run basic searches, meaning searches can be run using "AND" or "OR" in the search string. Discovery Accelerator cannot do proximity searches. Clearwell is the more robust tool and can handle more complex search strings. The limitation for Clearwell is the eDiscovery Team is limited by its number of processing licenses. CBP purchased 8.5 Terabytes (TB) of processing licenses. As of today, there are only 217 GB of processing licenses available. This means if the search collection in Clearwell exceeds 200 GB the data collected cannot be processed.

20.     There are two ways to make processing licenses available.  The first is to archive a search, the second is to purchase more licenses. There are 122 active cases in Clearwell. Nine of these active cases have used 6.1 TB of the licensure.  The other 113 have used 1.9 TB of data.  Currently, no archiving can be completed to release any processing licenses.

21.     The eDiscovery Team also uses Office 365 E3 to pull emails.  This tool must also be accessed using an Administrator account. Searches run with this tool can only have a maximum of 20 key words. Searches are also done using Electronically Stored Information (ESI) pulls. These are pulls from individual hard drives, personal drives or group shared drives. The only tool available to the eDiscovery Team to use for ESI pulls is Windows. Windows is very limited in the depth it can search for key words and only one key word or short phrase can be run at a time. Typically if there is a possibility of a document being in a folder, each folder must be searched individually, which increases the number of searches that must be run to collect this data.

22.     In addition to the technical issues described above, the eDiscovery Team was impacted when it transitioned to a new management office, and moved to a new building on March 16, 2020. The following day, on March 17, 2020, the eDiscovery Team began teleworking in response to the COVID 19 pandemic.

4

23.     When the eDiscovery Team began teleworking, they could only run a search using
        a laptop to access (remote controlled) their main computers. The access to their
        main computers was limited to an 8 hour shift. Due to the number of CBP
        individuals teleworking, the connectivity of eDiscovery team member was prone to
        drop several times a day. Accordingly, access to run searches was impacted by
        using remote control sessions. The eDiscovery Team experienced problems
        copying data because of excessive network traffic. CBP also begin to change
        security access to protect the agency against external cyber-attacks and insider
        threats. The implementation of these security policies impacted the eDiscovery
        Team's ability to conduct its work. To fix the impact, all eDiscovery team
        members, along with their computers, had to be put on an exemption list so the
        system would recognize their logins as approved so they could conduct their normal
        work.  Recently, a new policy was implemented that disabled the types of external
        drives OIT used to transfer data to the FOIA Division and other OIT
        customers. Issues with this new policy are still being worked out.

24.     On or about November 11, 2018, Plaintiff submitted a FOIA request for records
        "regarding a Mobile Field Force Demonstration originally scheduled for November
        6, 2018, in El Paso, Texas." The time period for this request was from October 1,
        2018 to November 11, 2018. This request was assigned case number CBP-OFO-
        2019-010211. The CBP FOIA Division originally deemed Plaintiff's FOIA request
        to be overly broad.

25.     Despite deeming request CBP-OFO-2019-010211 overly broad, the FOIA Division
        completed its search for responsive records in January 2020. The FOIA Division
        identified 511 files of potentially responsive records in its search. A file consists of
        document families. A document family is an email and any attachments to that
        email. The 511 files consists of 6,064 emails containing 8,358 documents. CBP
        estimated 63,600 pages of records make up the 8,358 documents. The FOIA
        Division began processing the 511 files for release in February 2020.

26.     Between February and October, 2020, the FOIA Division reviewed approximately
        85 files consisting of 19,805 pages of potentially responsive records for FOIA
        request CBP-OFO-2019-010211. The FOIA Division found 112 pages to be
        responsive and partially releasable, 8 pages responsive and withheld in full, 18,873
        pages non-responsive, and 812 pages to be duplicative. Records have been
        processed as follows:

| Month | Pages Reviewed | Number Responsive | Date Released |
|---|---|---|---|
| Feb.-March | 2,022 pages | None | |
| April | 673 pages | None | |
| May | 711 pages | None | |
| June | 651 pages | 10 pages | 06/29/2020 |
| July | 1,051 pages | 36 pages | 07/28/2020 |
| August | 750 pages | 08 pages | 08/19/2020 |
| September | 667 pages | 05 pages | 09/28/2020 |
| October | 13,280 pages | 53 pages | 10/30/2020 |

27.   As of October 30, 2020, there remains approximately 42-43 GB of unprocessed data for request CBP-OFO-2019-010211. Out of the original 511 files, approximately 426 remain un-reviewed. A file consists of document families that are made up of an email and any attachments to that email. At this time, CBP estimates 43,800 pages of records remain unprocessed for request CBP-OFO-2019-010211.

28.   In October 2020, the FOIA Division was able to assign a full-time contract employee to work exclusively on processing request CBP-OFO-2019-010211. This employee processed approximately 25 files during the month of October, consisting of a total of 13,280 pages. This employee will remain exclusively assigned to processing Plaintiff's FOIA requests until they are completed.

29.   Beginning November 23, 2020, the FOIA Division will be able to dedicate a second full-time contract employee exclusively assigned to CBP-OFO-2019-010211. This second contract employee will also remain exclusively assigned to processing Plaintiff's FOIA requests until they are completed.

30.   CBP estimates each contract employee that is exclusively assigned to Plaintiff's FOIA requests can review an average of 12,500 pages of records each month. However, all records require final review by a FOIA supervisor.

31.   A FOIA supervisor, in balancing all their duties and responsibilities, typically reviews an average of 500 pages of records per month for each case they oversee. The FOIA Division is committing its resources so that a minimum of 5,000 pages per month can undergo final review for Plaintiff's requests.

32.   As of October 30, 2020 the FOIA Division estimates more than 43,000 pages of potentially responsive records needing to be reviewed for request CBP-OFO-2019-010211.

33.   On or about June 16, 2018, Plaintiff submitted a FOIA request to CBP requesting "any and all directives, emails, text messages and other communications from CBP officials regarding the handling of potential asylum seekers at ports of entry when port facilities are at 'capacity.'" The FOIA Division assigned the request a FOIA tracking number CBP-2018-064544.

34.   The FOIA Division deemed Plaintiff's request to be overly broad. In January 2020, counsel for Plaintiff and CBP conferred in narrowing the search parameters for request CBP-2018-064544. Subsequently, CBP competed its search for records in February 2020. CBP's search identified 287 GB of data. CBP estimates the 287 GB of data is made up of approximately 520 files containing 90,000 – 150,000 pages of potentially responsive records.

35.   The FOIA Division currently lacks space on its shared drives to receive 287 GB of data identified as potentially responsive to request CBP-2018-064544. As explained in greater detail above, the eDiscovery Team currently only has 217 GB of Clearwell processing licenses available. Thus, any search collection in Clearwell

that exceeds 200 GB of data collected cannot be processed. Due to this lack of available data space or processing licenses, the search files relating to request CBP-2018-064544 have not been transferred from OIT to the FOIA Division. The FOIA Division has looked at external hard drives, shared or other drives as a means to have the files transferred, however data space remains unavailable. The FOIA Division is still exploring ways to receive the data from OIT in an effort to avoid delay in processing, once the current available set of records is completed.

36.  CBP FOIA will maintain two full-time employees exclusively dedicated to Plaintiff's requests, CBP estimates these two employees will continue initial processing of 25,000 pages of records each month. The FOIA Division will remain committed to conducting final review and processing of 5,000 pages of records per month.

37.  CBP FOIA is dedicating extraordinary resources to Plaintiff's requests. Only one other request pending in the FOIA Division has a staff person exclusively assigned to its processing. That request is also in litigation and has over 2 million pages of potentially responsive records.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

*Patrick Howard*

Patrick Howard
Branch Chief, FOIA Division

Executed November 17, 2020