UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ROBERT MOORE, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | EP-19-CV-00279-DCG |
| U.S. IMMIGRATION AND CUSTOMS § | |
| ENFORCEMENT; U.S. CUSTOMS § | |
| AND BORDER PROTECTION; AND § | |
| U.S. DEPARTMENT OF HEALTH AND § | |
| HUMAN SERVICES, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant U.S. Customs and Border Protection's ("CBP") "Motion for *Open America* Stay and Extension of Finite Production Schedule" ("Motion") (ECF No. 59), filed on November 20, 2020. For the reasons that follow, the Court **GRANTS IN PART, DENIES IN PART** CBP's Motion.

### I.     BACKGROUND

Plaintiff Robert Moore ("Plaintiff") is a local reporter who, from June 2018 to March 2019, submitted five requests for information under the Freedom of Information Act ("FOIA") to three federal agencies: U.S. Immigration and Customs Enforcement ("ICE"), CBP, and U.S. Department of Health and Human Services ("HHS"). Compl. at 1, ECF No. 1. According to Plaintiff, these requests seek agency records involving border enforcement, fundamental shifts in the treatment of asylum seekers, and operation of immigration detention facilities in El Paso. *Id.* After these three agencies failed to produce a single document for a period of over fifteen months, Plaintiff brought the instant lawsuit against them on October 1, 2019. *Id.*

On December 18, 2019, nearly a month after the three agencies had filed their answer, Plaintiff filed his "Motion for Judgment on the Pleadings" (ECF No. 26).  After the agencies requested—and the Court granted—a series of unopposed motions to extend the deadline to respond, the parties asked the Court to stay the agencies' deadline to file their response and to enter a finite production schedule.  ECF No. 30.  On January 20, 2020, the Court granted the stay and entered a production schedule under which the three agencies had to: (1) complete their record searches by February 7, 2020; (2) confer with Plaintiff on such record searches on February 14, 2020; (3) complete their first release of records by March 30, 2020; and (4) continue to release records to Plaintiff on a rolling basis every thirty days thereon.  ECF No. 31.  The Court also ordered the three agencies to file written status reports relating to their production of records to Plaintiff on February 24, 2020, April 3, 2020, and every thirty days thereafter.  *Id.*

On July 8, 2020, Plaintiff moved for the Court to lift the stay and to enter a finite production schedule after alleging that CBP and HHS failed to comply with "the spirit and letter" of the Court's finite production schedule.  *See* ECF No. 46 at 1.  On August 10, 2020, the Court granted in part, denied in part such motion.  *See* Mem. Order, ECF No. 51 [hereinafter "August Order"].  In that order, the Court ruled that the stay had to remain in place mostly in view of the exigent circumstances presented by the COVID-19 pandemic.  *Id.* at 5–6.  As to CBP, however, while it *generally* appeared to have been exercising due diligence, the Court also noted that CBP's production rate was inadequate under the circumstances and had to be modified.  *Id.* at 8.  Further, the Court noted that CBP's failure to provide any specific details regarding Plaintiff's requests, CBP-2018-0645544 and CBP-2019-010211, effectively left the Court and Plaintiff in the dark about the extent of its progress in reducing its backlog and producing all records to Plaintiff.  *Id.*

Consequently, the Court entered a finite production schedule to ensure that (1) CBP was transparent about its progress in reducing its backlog and producing all responsive records to Plaintiff on both FOIA requests; and (2) there was no further delay in processing the same, which were already over two years old. Such production schedule required CBP to "completely process and produce all . . . responsive records to Plaintiff no later than November 20, 2020[.]" *Id.* at 9–10.

On November 19, 2020 (the day before the production deadline), at 4:56 p.m., CBP filed the instant motion. *See* Mot., ECF No. 59. Therein, CBP requests the Court to implement a new stay of proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) and *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), and to extend the deadline under the finite production schedule issued on August 10. *Id.* at 1–2.

## II.   DISCUSSION

CBP contends that its efforts to produce all responsive documents to Plaintiff and the current circumstances warrant a new *Open America* stay and an extension of the final production deadline, consistent with the requested stay, until at least June 30, 2021. *Id.* at 13–14. Specifically, CBP avers that it meets all the statutory requirements for the stay because of the number of potentially responsive records to Plaintiff's FOIA requests, coupled with the existence of exceptional circumstances that CBP faces (namely, the exigent circumstances presented by the COVID-19 pandemic and its impact on workload), and the "extraordinary steps" it has taken in obtaining resources to designate exclusively to Plaintiff's FOIA requests. *Id.* at 8–12.

But Plaintiff contends that CBP has not met its burden of meeting the statutory requirements for a stay for either of his FOIA requests. Resp. in Opp'n at 3–4, ECF No. 64. In particular, Plaintiff argues that CBP fails to present sufficient evidence establishing that

exceptional circumstances exist at this time and that it has exercised due diligence in minimizing its backlog, waiting until the last minute to increase and commit its resources. *Id.* Notwithstanding, acknowledging the impact of the COVID-19 pandemic, Plaintiff asserts that he is amenable to CBP's requested relief of an extension of the production deadline—although not to the one CBP proposes—because "[i]t may not be possible at this point for the agency to produce all documents in a week's time." *Id.* at 14. The final production deadline that Plaintiff proposes for both FOIA requests is March 31, 2021, three months earlier than CBP's. *Id.* at 15.

After a thorough review of the record, the Court agrees with Plaintiff. The Court is of the view that even when assuming that the COVID-19 pandemic and its impact on CBP's workload constitutes exceptional circumstances under § 552(a)(6)(C), CBP still failed to establish how it was exercising due diligence in producing Plaintiff's requests.

### A. Legal Standard.

Under FOIA, upon receipt of a records request, the responding agency must, in relevant part,

> determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor.

5 U.S.C. § 552(a)(6)(A)(i)(I). Section 552(a)(6)(C)(i) provides that requesting parties constructively exhaust their available administrative remedies with respect to their request if the responding agency fails to comply with the statutory deadlines. It further provides that "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i).

In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), the D.C. Circuit found that a responding agency is entitled to additional time under this "exceptional circumstances" provision when the agency:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) (quoting 5 U.S.C. § 552(a)(6)(C)). "Where an agency is making good faith efforts and exercising due diligence in processing requests on a first-in, first-out basis, a stay of proceedings is authorized so long as the agency also demonstrates reasonable progress in reducing its backlog of pending requests." *Daily Caller News Found. v. F.B.I.*, 387 F. Supp. 3d 112, 116 (D.D.C. 2019) (internal quotation marks and alterations omitted).

After *Open America*, Congress amended FOIA to include two additional factors for courts to consider in analyzing whether exceptional circumstances exist in a particular case:

> [T]he term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

*Id.* (quoting 5 U.S.C. § 552(a)(6)(C)(ii)-(iii)).  The legislative history of these amendments indicates that Congress intended the amendments to be "consistent with the holding in *Open America*," and merely sought to "clarify that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." H.R. Rep. 104–795 at 24 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3448, 3467; *see also Elec. Privacy Info. Ctr. v. F.B.I.*, 933 F.

Supp. 2d 42, 46 (D.D.C. 2013) ("'[R]outine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances.'") (citing H.R. Rep. 104-795 at 24 (1996)).

"Accordingly, it is not sufficient that an agency receives a high number of FOIA requests or has a large backlog of requests to which it must respond." *Daily Caller News Found.*, 387 F. Supp. 3d at 116. "Instead, an agency must show that the number of requests received in the relevant period was truly unforeseen and remarkable." *Id.*; *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259 n.4 (D.D.C. 2005) ("An agency must show more than a great number of requests to establish [ ] exceptional circumstances under the FOIA"). Courts have also held that other relevant circumstances should be considered when granting an *Open America* stay, "including an agency's efforts to reduce the number of pending requests, the amount of classified material, [and] the size and complexity of other requests processed by the agency." *Daily Caller News Found.*, 387 F. Supp. 3d at 116 (internal quotation marks and citations omitted).

### B. CBP Failed to Meet Its Burden in Requesting a New *Open America* Stay.

Here, the record does not support the implementation of another *Open America* stay. First, to be sure, the record shows that exceptional circumstances exist but *solely* because of the impact of the exigencies presented by the COVID-19 pandemic. As the Court noted in its August Order, since March 2020, "[f]ederal agencies, like CBP and HHS, have been impacted differently based on their unique needs, current capabilities to operate remotely, staffing issues, the types of records they process, existing FOIA processes, and technological capabilities." Mem. Order at 6 (internal quotations omitted). At that time, CBP's FOIA division had been unable to process records at a regular rate in part due to the strained ability of CBP remote servers to handle the volume of people teleworking since the pandemic started. *See* ECF No. 35

at 3; ECF No. 37 at 2; ECF No. 39 at 2; ECF No. 44 at 2.  The following chart that CBP provided reflects such impact on its regular processing rate of Plaintiff's FOIA requests:

| Month | Pages Reviewed | Number Responsive | Date Released |
|---|---|---|---|
| Feb.-March | 2,022 pages | None | N/A |
| April | 673 pages | None | N/A |
| May | 711 pages | None | N/A |
| June | 651 pages | 10 pages | June 29, 2020 |
| July | 1,051 pages | 36 pages | July 28, 2020 |
| August | 750 pages | 08 pages | August 19, 2020 |
| September | 667 pages | 05 pages | September 28, 2020 |
| October | 13,280 pages | 53 pages | October 30, 2020 |

Mot. at 4.

That said however, Plaintiff correctly points out that CBP's workload during the last three years was neither unforeseen nor unpredictable.  Indeed, the record establishes that the opposite is true: CBP's workload between FY2017 to FY2019 has been consistently the same and wholly anticipated with what it reported to Congress.  Resp. in Opp'n at 5–6.  For instance, in its funding request for FY2018 (made during FY2017), CBP anticipated and projected 80,000 FOIA requests, nearly the same amount of requests that CBP received that year—87,388.  *Compare* CBP, *Fiscal Year 2018 Congressional Justification* at 168 (May 22, 2017), available at: https://www.dhs.gov/sites/default/files/publications/CBP%20FY18%20Budget.pdf *with* Mot., Ex. 1 at 2.  In FY2019, CBP similarly reported receiving 86,133 requests.  *See* Mot., Ex.1 at 2. What is more, during the same period of time between FY2017 to FY2019, CBP also reported an increase in its backlog, increasing from 1,008 to 6,660 between FY2017 to FY2018, and from 6,660 to 10,466 between FY2018 to FY2019.  Resp. in Opp'n at 6 (citing Dep't of Homeland Security, *2019 Chief Freedom of Information Act Officer Report* at 34 (Apr. 2019), available at: https://www.dhs.gov/sites/default/files/publications/2019_chief_foia_officer_report_april_2019).

Notably, CBP does not appear to have published information about its FOIA workload in its budget requests for FY2019 and FY2020. *See generally* CBP, *Fiscal Year 2019 Congressional Justification* (Feb. 9, 2018), available at:

https://www.dhs.gov/sites/default/files/publications/U.S.%20Customs%20and%20Border%20Protection.pdf.

But while CBP's workload was neither unforeseen nor unpredictable, the unexpected exigencies presented by the COVID-19 pandemic still drastically hampered CBP's ability to process any number of pending FOIA requests, regardless if they were either foreseeable or unforeseeable. Hence, the Court is of the view that exceptional circumstances exist here because the delays caused by the COVID-19 pandemic were not "routine, predictable agency backlogs for FOIA requests." *Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 46. *However*, but for the pandemic, the Court would have concluded the opposite because the record indicates that CBP's workload was predictable and accurately projected.

But even if exceptional circumstances exist here, the Court agrees with Plaintiff that CBP fails to show how it has exercised due diligence in processing Plaintiff's FOIA requests. To begin, at the time of the Court's August Order, CBP had not provided any specific details regarding request CBP-2018-0645544, or even the total amount of pages potentially responsive for request CBP-2019-010211, effectively leaving the Court and Plaintiff in the dark about the extent of its progress in reducing its backlog and producing all records to Plaintiff. Mem. Order at 8. After the Court ordered CBP to identify and report the number of pages of all potentially responsive records pertaining to both requests, on August 14, 2020, CBP reported that it had identified 63,600 pages potentially responsive to request CBP-2019-010211 and 90,000 to 150,000 pages potentially responsive to request CBP-2018-0645544. *See* ECF No. 52.

Considering those figures and the chart above, the record shows that, even before the pandemic, CBP has been exercising no due diligence in processing Plaintiff's FOIA requests because its production rate was extremely inadequate.[1]  First, as mentioned above, despite the fact that CBP's general workload before the pandemic had been anticipated and projected in its own reports to Congress, the record contains no evidence that CBP requested additional funding then to deal with what it now claims was a "dramatic increase in the number of FOIA requests received."  Mot., Ex. 1 at 2; *see also Nightingale v. U.S. Citizenship and Immig. Services*, 19-CV-03512-WHO, 2020 WL 7640547, at *10 (N.D. Cal. Dec. 17, 2020) (finding that DHS and some component agencies failed to show they were exercising due diligence because "[t]here [was] no evidence in the record that [they] ha[d] even attempted, let alone succeeded, in persuading Congress to change the law or provide additional funds to achieve compliance [with FOIA].").  The record neither contains any evidence of what CBP's workload expectations were for 2019 and 2020 because CBP appears not to have published such information in its budget requests for FY2019 and FY2020.  CBP neither included such information in its motion, reply, or response to Plaintiff's sur-reply.  With such information lacking from the record, the Court is incapable of knowing or even estimating the extent of CBP's predicament and how it has exercised due diligence to address it.

Second, since February 24, 2020, CBP was aware that request CBP-2019-010211 included at least 6,064 emails consisting of 8,358 documents totaling 63,600 pages, although CBP had not disclosed this last number to the Court or Plaintiff until August 14th.  ECF No. 32

---

[1] CBP is correct that the Court found that the agency was "*generally* exercising due diligence in responding to Plaintiff's relevant requests" in its August memorandum order.  Mot. at 3 (quoting Mem. Order at 5 (emphasis in original)).  However, the Court made such finding based on the record *at that time*, when CBP had yet to disclose the total amount of pages it had identified as potentially responsive to Plaintiff's FOIA requests.  *See infra.*

at 2.  Yet, at the time and with that knowledge, CBP only processed about 2,022 pages during February and March before the pandemic started.  *See* Mot. at 4 (chart).

To illustrate the inadequacy of CBP's pre-pandemic production rate, assuming that no pandemic existed and that CBP maintained a production rate of 2,000 pages per month, it would still take CBP about 31 months (or nearly three years) *solely* to finish reviewing the 63,600 pages pertaining to request CBP-2019-010211.  Moreover, due to a lack of shared drive space, CBP stated that the review of all 90,000 to 150,000 pages potentially responsive to request CBP-2018-0645544 could not begin until request CBP-2019-010211 was fully processed.  ECF No. 35 at 2.  In other words, even when optimistically assuming that only 90,000 pages need to be reviewed for request CBP-2018-0645544, CBP would still need an additional 45 months to finish reviewing both of Plaintiff's FOIA requests.  As such, taking the pandemic out of the equation and under its own best estimates, CBP would still be reviewing Plaintiff's FOIA requests **six years** into the litigation.

Hence, the record establishes that CBP maintained an extremely inadequate production rate and that the agency consistently failed to disclose sufficient specific details about Plaintiff's FOIA requests that would reveal the true extent of its progress in reducing its backlog.  Indeed, in its response in opposition to Plaintiff's motion to lift the stay, CBP itself represented to the Court in July that "[t]he number of documents identified does not necessarily equal the total number of pages of records that are potentially responsive to Plaintiff's FOIA request[s].  Each document may consist of multiple pages."  CBP's Resp. in Opp'n at 4 n.2, ECF No. 48; Resp. to Sur-reply at 1 n.1, ECF No 72.  Despite such statement, CBP never disclosed the exact number of pages of such records that were potentially responsive until the Court explicitly ordered it to do so in August.

Concerning its due diligence during the pandemic, the Court applauds CBP's success in resolving many of the initial issues and delays caused by the pandemic and its recent efforts in hiring two full-time contract employees to work exclusively on request CBP-2019-010211. Mot. at 9; Reply at 8, ECF No. 67.  CBP represents that these two employees have apparently reviewed about 33,734 of potentially responsive pages during October and November 2020. Reply at 8.  But for all that, CBP waited for *two months* after the Court ordered CBP to produce all records by November 20, 2020, to hire these two prolific full-time contract employees. Giving CBP the benefit of the doubt, the Court assumes that the agency spent these two months processing the employees' applications and any required security background checks.  But as mentioned above, based on CBP's own estimates, the record shows that its pre-pandemic production rate was already extremely inadequate and that the agency only began the process of hiring these employees within a few weeks of the looming production deadline.  Thus, CBP cannot simply justify with its most recent efforts what has been over two years' worth of delay since Plaintiff first submitted his FOIA requests to the agency.

To make matters worse, CBP now advises the Court that its new estimate of the total count of potentially responsive pages for request CBP-2019-010211 will likely exceed the original estimate of 63,600.[2]  Reply at 9 n.3.  CBP also advises that, even though it proposes an extension until at least June 31, 2020, it still cannot commit to complete all production for that date.  *See* Resp. to Sur-reply at 2.  But that is unacceptable; CBP cannot simply move the

---

[2] The Court notes that CBP could have noted any new developments concerning its estimates in its monthly reports.  However, counsel failed to file the monthly status reports for the months of October, November, and December as ordered by the Court in its January 21, 2020 Order.  *See* ECF No. 31 ("IT IS FINALLY ORDERED that Defendants SHALL file written status reports relating to their production of records to Plaintiff on February 24, 2020, April 3,2020, and every thirty (30) days thereafter.").

<u>The Court kindly reminds counsel to timely file such monthly reports.</u>

goalpost as it pleases without reasonable effort or full transparency on its part. Based on Plaintiff's unrefuted representations to the Court, CBP has rejected Plaintiff's multiple offers to work with it to narrow the search parameters for such request—to reduce its potentially responsive pages—and to negotiate a stay with a reasonable finite end date. Resp. in Opp'n at 14. Instead, CBP filed the instant motion on the day before the production deadline, at 4:56 p.m., seeking "a nebulous stay" justified by its most recent efforts and a purportedly overwhelming workload—a workload which, as discussed above, CBP has not been fully transparent about and which the record strongly indicates resulted from CBP's own actions. *Id.*

And while the Court acknowledges that the COVID-19 pandemic was certainly unpredictable, its impact on CBP's production rate could have also been reasonably mitigated had CBP exercised due diligence from the start. Put another way, the record shows that the pandemic only served to exacerbate the consequences of CBP's lack of due diligence in processing Plaintiff's FOIA requests before it even began. Like the grasshopper from Aesop's fable that failed to prepare for winter, CBP cannot blame the pandemic for its current overwhelming workload when it was the agency's own actions and omissions which prepared the ground for such predicament.

In conclusion, the Court finds that the record's "repeated missed deadlines, unexplained . . . adjustments, and limited communication from [CBP]" support a finding that the agency has failed to exercise due diligence in processing Plaintiff's FOIA requests. *Bloomberg, L.P. v. U.S. Food and Drug Admin.*, 500 F. Supp. 2d 371, 376 (S.D.N.Y. 2007). Therefore, the Court denies CBP's request for a new *Open America* stay under 5 U.S.C. § 552(a)(6)(C). Because the Court

denies CBP its requested stay, all judicial proceedings pertaining to Plaintiff's claims against CBP must proceed from hereon.[3]

At the same time, as Plaintiff himself concedes, "even if CBP's predicament is its own making, the agency is still in a predicament." Thus, the Court will grant CBP's request for an extension of the final production schedule, although not the one it proposes. In view of the uncertainty caused by the ongoing COVID-19 pandemic, CBP and Plaintiff shall confer and agree to a reasonable finite production schedule and a final production deadline that considers the exigencies of the COVID-19 pandemic. If the parties are unable to reach an agreed-upon schedule and deadline, the Court shall impose its own.

Accordingly, **IT IS ORDERED** that CBP's "Motion for *Open America* Stay and Extension of Finite Production Schedule " (ECF No. 59) is **HEREBY GRANTED IN PART and DENIED IN PART.** The Motion is **GRANTED** as to CBP's request for an extension of the finite production schedule. The Motion is **DENIED** as to CBP's request for a new *Open America* stay under 5 U.S.C. § 552(a)(6)(C).

**IT IS FURTHER ORDERED** that CBP **SHALL** file its response to Plaintiff Robert Moore's "Motion for Judgment on the Pleadings" (ECF No. 26) within **fourteen (14) days** of this Order. Plaintiff may file a reply within **seven (7) days** of CBP's filing of its response.[4]

---

[3] To clarify, the stays for the judicial proceedings pertaining to Plaintiff's claims against the other defendant-agencies, ICE and HHS, remain unchanged.

[4] That way, Plaintiff's motion shall be ripe for the Court to rule upon if needed. While it will not rule on Plaintiff's motion immediately after becoming ripe, the Court will rule on the motion only if CBP fails to meet its deadlines or other commitments set forth in this Order or by the parties' agreements, and Plaintiff requests such relief.

**IT IS FURTHER ORDERED** that the parties **SHALL CONFER** and **JOINTLY FILE** a proposed finite production schedule for both of Plaintiff's relevant FOIA requests, consistent with the instructions and orders mentioned elsewhere in this Order, by **January 25, 2021.**

**IT IS FURTHER ORDERED** that the parties **SHALL CONFER** and **JOINTLY FILE** a proposed second amended scheduling order, consistent with the parties' proposed finite production schedule for both of Plaintiff's relevant FOIA requests[5], by **January 25, 2021.**

**IT IS FURTHER ORDERED** that CBP **SHALL** appraise the Court on the status of both of Plaintiff Robert Moore's FOIA requests **on a weekly basis every Friday before close of business,** starting on **Friday, January 15**, **2021**, for the duration of this case. CBP **SHALL** submit such weekly reports with an accompanying declaration from Mr. Patrick Howard, the Branch Chief of the FOIA Division at CBP. Such reports and accompanying declarations **SHALL** detail CBP's progress and developments in processing both Plaintiff's FOIA requests *and* track the specific number of files/records/documents and total amount of pages reviewed that week and how many are outstanding for each individual FOIA request. Any incomplete, late, or seemingly cloned ("copied-and-pasted") submissions **SHALL** not be deemed to comply with this Order.[6]

**IT IS FURTHER ORDERED** that this case is **SET** for an **EVIDENTIARY HEARING** via Zoom on **Tuesday, March 2, 2021,** at **9:00 a.m. MST** and **every thirty (30)**

---

[5] In other words, the parties must closely align the proposed scheduling order deadlines with those of their proposed finite production schedule. That way, with judicial proceedings now moving forward, if CBP misses the agreed-upon final production deadline, the Court shall hold a bench trial shortly thereafter. And since the other two defendant-agencies appear to be on schedule in processing their respective FOIA requests, the bench trial would only be needed for Plaintiff's claims against CBP.

[6] This instruction only **SUPERSEDES** the Court's previous instruction in its January 21, 2020 Order to file a monthly status report as to CBP. *See* ECF No. 31 at 2. Simply put, ICE and HHS must still file monthly status reports to comply with the Court's January 21, 2020 Order.

**days thereafter** for the duration of this case. At such evidentiary hearings, the parties **SHALL** have leave to present any relevant disputes and supporting witnesses before the Court. If no relevant dispute exists, the parties **SHALL** only appraise the Court on the status of both of Plaintiff's FOIA requests at the hearing.

  **So ORDERED and SIGNED this 12th day of January 2021.**

_____<br>
**DAVID C. GUADERRAMA**<br>
**UNITED STATES DISTRICT JUDGE**