**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| ROBERT MOORE, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | EP-19-CV-00279-DCG |
| § | | |
| U.S. IMMIGRATION AND CUSTOMS § | | |
| ENFORCEMENT; U.S. CUSTOMS AND § | | |
| BORDER PROTECTION; AND § | | |
| U.S. DEPARTMENT OF HEALTH § | | |
| AND HUMAN SERVICES, § | | |
|     Defendant. § | | |

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**TO THE HONORABLE DAVID C. GUADERRAMA, U.S. DISTRICT JUDGE**

    COMES NOW **Robert Moore**, Plaintiff, and files the following Proposed Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

**A.**     **U.S. Customs and Border Patrol (CBP) Meters Entry of Asylum Seekers in 2018.**

    1. In 2018, the U.S. government implemented two policies which together aimed at deterring immigration in cruel ways. First, the government implemented a procedure called – metering – which severely limited the number of asylum seekers who could legally cross the border. This policy forced asylum seekers to cross the border away from ports of entry and seek asylum from border patrol agents. Second, the government implemented a zero-tolerance policy for those who crossed the border away from a port of entry – using 8 U.S.C. § 1325 to separate parent asylum-seekers from their children.

    2. The government first implemented metering in the El Paso area in the spring of 2018.

3. The government claimed at the time that metering was required because of capacity issues at CBP's ports of entry.

**B. Robert Moore's Request under the Freedom of Information Act.**

4. In the midst of this extraordinary sequence of events, Robert Moore submitted several public information requests to CBP regarding the implementation of metering in June

5. Moore sent a FOIA request to CBP on June 16, 2018 seeking:

> any and all directives, emails, text messages and other communications from CBP officials regarding the handling of potential asylum seekers at ports of entry when port facilities are at 'capacity.' The period covered by this request is Jan. 1, 2018 to June 16, 2018.

6. Robert Moore is a decorated non-profit journalist known for timely and cutting-edge journalism in the borderlands region. He is one of the few investigative journalists in town.

7. On October 1, 2019 – over one year from the submission of his request – Moore filed suit to obtain a simple response to this FOIA request (along with four others). [ECF No. 1].

8. After litigation was filed, CBP attempted to avoid production on the basis that its workload necessitated this result. In January 2021, however, the Court denied CBP's effort to stay this proceeding on the basis of its workload and ordered that CBP finalize its production by June 2021. [ECF No. 73]. Finally, in May and June 2021 – three years after the request was initially submitted – CBP started producing documents responsive to Moore's request on metering.[1]

9. The parties have resolved all issues with the exception of one dispute as to the application of 5 U.S.C. § 552(b)(7)(E) ((B)(7)(E) exemption) to certain emails produced to Moore on June 15 and June 21, 2021. *See* Ex. J-32, Chart of disputes.

---

[1] CBP, HHS, and ICE all responded to Moore's various requests in 2020 and 2021. The parties agree that they have resolved all other disputes regarding Defendants' responses to Moore's requests other than the issues stated herein.

**C.     CBP's withholding under the (B)(7)(E) exemption.**

10. On June 15, 2021, CBP produced 936 pages of responsive documents to Moore. Ex. J-29.

11. On June 21, 2021, CBP re-produced 30 pages from the June 15 production removing the following redactions:

   a. The number of detainees held in custody in the El Paso Field Office.

   b. The combined number of detainees in custody from two ports of entry.

   c. The detention capacity for border patrol sectors and field offices. Ex. J-30.

12. CBP maintained all other redactions subject to the (b)(7)(E) exemption.

13. CBP did not provide Moore or the Court with anything to justify its redactions beyond what is included in its conclusory Vaughn index produced on June 21, 2021. Ex. J-31.

14. CBP did not provide specific detailed justification of the redaction of records in the Vaughn index. *Id.*

15. Despite CBP's otherwise heavy redactions, Moore has agreed to limit his dispute to the application of the (B)(7)(E) exemption to the redactions listed in Exhibit J-32.

16. CBP itself releases the detention capacity for field offices without claiming that the disclosure of this information helps criminals circumvent the law.

17. CBP and its parent agency – U.S. Department of Homeland Security (DHS) – regularly present to the public the maximum "capacity" of port of entry facilities without claiming that its disclosure helps criminals to circumvent the law.

18. CBP releases the detention capacity for border patrol stations without claiming that its disclosure helps criminals to circumvent the law.

19. The number of unaccompanied minors, family units, and asylum seekers processed by CBP are revealed to the public on a regular basis by CBP.

20. Moreover, the processing capacity is not constant – it changes on a day-to-day basis based on factors far beyond the port of entry. It can also depend on staffing decisions – all of which are stale and no longer applicable to the present.

21. Detention "capacity" or space in any particular port of entry is fluid – going up and down on a daily basis depending on a variety of factors. The capacity on one day may be different from the next.

## CONCLUSIONS OF LAW

**A.**  **Introduction.**

43. The "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the government accountable to the governed."[2]

44. When someone requests information from a federal agency, the agency "should go as far as they reasonably can to ensure that they include what requesters want to have included within the scopes of their FOIA requests."[3]

45. To justify its use of any exemption, an agency must "describe the documents and the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption."[4]

---

[2] *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).
[3] *Amnesty Int'l USA v. CIA*, No. 07-cv-5435, 2008 WL 2519908 *12 (S.D.N.Y. Jun. 19, 2008) (quoting U.S. Dep't of Justice (DOJ), Office of Information Privacy (OIP), *OIP Guidance: Determining the Scope of a FOIA Request*, FOIA Update Vol. XVI, No. 3 at 4 (1995) and DOJ, OIP, *Freedom of Information Act Guide* 959 (Mar. 2007)("It is incumbent upon an agency, of course, not to interpret the scope of a FOIA request too narrowly.")).
[4] *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 75 (D.D.C. 2018), *on reconsideration in part*, 442 F. Supp. 3d 240 (D.D.C. 2020) (citing *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

46. Here, Moore challenges only one issue: CBP's decision to apply the (b)(7)(E) exemption to specific redactions in its June 15 and June 21, 2021 production.

**B.     CBP has not met its burden that the (b)(7)(E) exemption should apply to documents produced to Plaintiff by CBP on June 15 and June 21, 2021.**

47. At trial, the agency again bears the burden of proving "by a preponderance of the evidence that the factual dispute [of whether an exemption should apply] should be resolved in its favor."[5]

48. Any redaction made pursuant to (b)(7)(E) is permitted only if the agency establishes that it will protect "records or information compiled for law enforcement purposes" that "would . . . disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[6]

49. Here, the one paragraph listed in CBP's Vaughn Index is not sufficient to justify ICE's burden that the (b)(7)(E) exemption applies to the redacted portions.[7]

50. Moreover, (b)(7)(E) simply does not apply based on the testimony presented at trial.

51. CBP argues that revealing isolated information about the following topics could "reasonably lead to circumvention of the law": (1) detention numbers at the FO and border patrol sector level during a particular week in 2018; (2) number of spaces and detained persons in one to two specific ports of entry on particular days in 2018; (3) number of credible fear, unaccompanied minors, and family units processed per day at the field office level during a specific time period in 2018; and (4) number of credible fear, unaccompanied minors, and family units processed at 1-2 ports during specific time periods in 2018.

---

[5] *Long v. U.S. ICE,* No. 14-CV-00109 (APM), 2020 WL 2849904, at *5 (D.D.C. June 2, 2020) (citing *Nat'l Parks & Conservation Ass'n v. Keppe,* 547 F.2d 673, 679-83 (D.C. Cir. 1976)).
[6] 5 U.S.C. § 552(b)(7)(E).
[7] *See, e.g., Ctr. for Investigative Reporting v. U.S. CBP,* 436 F.Supp. 3d 90, 102 (D.D.C. 2019) (finding that defendant failed to meet its burden to apply an exemption when the information it provides was vague, conclusory, and not specific to the redactions or withholdings in question).

52. The Court recognizes that no court has addressed the question of whether the (b)(7)(E) exemption applies to the information redacted here. Nonetheless, the evidence in this trial establishes that CBP has not established that the redacted information will "reasonably lead to the circumvention of the law."

> 1. <u>The (b)(7)(E) exemption does not apply to the redacted information reflecting the number of people in custody or detention capacity for an entire field office or border patrol sector in 2018.</u>

53. First, CBP has not established that the (b)(7)(E) exemption applies to combined number of people in custody or detention capacity for an entire Field Office or Border Patrol Sectors because it cannot reasonably be expected to risk circumvention of the law.[8] CBP itself releases the detention capacity for field offices in this production and has done so repeatedly in the last several years.

> 2. <u>The (b)(7)(E) exemption does not apply to the redacted information reflecting the number of minors, family units, or credible fear interviews in specific time periods in 2018.</u>

54. Second, CBP has failed to establish that a (b)(7)(E) exemption apply to the number of unaccompanied minors, family units, or credible fear interviewees during a specific time period in 2018. This information is made public on a regular basis by the agency. Moreover, the processing capacity is not something that is constant – it changes on a day-to-day basis based on factors far beyond the port of entry. It can also depend on staffing decisions – all of which are stale and no longer applicable to today's security scenario.

> 3. <u>The (b)(7)(E) exemption does not apply to the redacted information reflecting the number of persons who were detained or process on specific days in 2018 in specific ports of entry.</u>

---

[8] *Fams. for Freedom v. U.S. Customs & Border Prot.,* 797 F. Supp. 2d 375, 391-93 (S.D.N.Y. 2011) (finding that request for arrest statistics for entire sector will not help criminals circumvent the law and is not exempt under (b)(7)(E)). *See also, Fams. for Freedom v. U.S. Customs & Border Prot.,* 837 F. Supp. 2d 287, 297-300 (S.D.N.Y. 2011) (subsequent order reiterating that (b)(7)(E) does not preclude disclosure of sector-level statistics).

55. Next, CBP has failed to establish that a (b)(7)(E) exemption applies to the number of persons who were detained or processed in specific time periods in 2018 in specific ports of entry referenced in the emails. In fact, CBP has acknowledged that (b)(7)(E) does not apply to this data because it unredacted this very same information for the El Paso and Tornillo ports in one email. Moreover, it is undisputed that the number of cases being processed on any given day three years ago tells nothing to potential criminal actors as to what the capacity is today. The port could have processed two people on June 1, 2018. It could have processed 10 people on June 2, 2018. The danger inherent from a disclosure that a port of entry processed a certain number of people three years ago is far too speculative for the government to establish that the disclosure will "reasonably" lead to circumvention of the law.[9]

    4. <u>The (b)(7)(E) exemption does not apply to the redacted information reflecting the number of "spaces" that each port of entry may have had in specific time periods in 2018.</u>

56. Finally, CBP has failed to establish that the (b)(7)(E) exemption applies to the references made in the production to the number of "spaces" that each port of entry may have had on a particular day in 2018.

57. CBP argues that if a criminal entity obtained this information for different ports, they could overwhelm the capacity at a particular port and create chaos. This Court is not persuaded.

58. First, it is undisputed that detention "capacity" or space in any particular port of entry is fluid – going up and down on a daily basis depending on a variety of factors. The capacity on one day may be different from the next.

59. In addition, CBP regularly discloses the holding capacity for border patrol stations and ports of entry to the public without concern for its use by criminals. DHS has released the number

---

[9] 5 U.S.C. § 552(b)(7)(E).

of persons detained <u>and</u> the detention capacity of border patrol stations in the El Paso Sector during specific time periods in the past.

60. CBP claims that capacity information for border patrol stations is different because border patrol can easily move people from one station to the other in the event a station is overrun. The Court is unconvinced that there is any reasonable distinction between releasing the capacity of certain border patrol stations compared with the capacity of ports of entry. The evidence establishes that this is a distinction without a difference.

61. Nor can CBP argue that a criminal could use comparative strengths and weaknesses to undermine the agency. Moore is not seeking statistics for each port of entry in the El Paso Field office – the redacted information reveals only the capacity that was available at one particular time three years ago in 1-2 stations.[10]

62. In sum, the evidence that is being withheld is historical, limited information that CBP cannot show would "reasonably be expected to risk circumvention of the law." For these reasons, the Court finds that CBP failed to prove by a preponderance of the evidence that the (b)(7)(E) exemption applied to the following pages of production in Exhibit J-32 submitted to the Court. CBP is ordered to remove all redactions in Exhibit J-32 which refer to the above topics.

## CONCLUSION

Accordingly, it is HEREBY ORDERED, that judgment will be rendered reflecting. It is FURTHER ORDERED that Plaintiff will submit any Application for Attorney's Fees to the Court within 30 days of entry of this Order pursuant to the FOIA.

---

[10] *See, e.g., Fams for Freedom,* 797 F. Supp. 2d at 391-93 (finding that information regarding one Border Patrol station in particular will not "reveal the comparative strengths and weaknesses of the various stations" within a Sector).

September 1, 2021                      Respectfully submitted,

THE LAW OFFICE OF LYNN COYLE, PLLC
2515 N. Stanton St.
El Paso, Texas 79902
(915) 532-5544
(915) 532-5566 Facsimile


*/s/ Christopher Benoit*
LYNN COYLE
Texas State Bar No. 24050049
lynn@coylefirm.com
CHRISTOPHER BENOIT
Texas State Bar No. 24068653
chris@coylefirm.com

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Christopher Benoit*
Christopher Benoit